NOT DESIGNATED FOR PUBLICATION

No. 118,196

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of D.J.L.T.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Allen District Court; TOD MICHAEL DAVIS, judge. Opinion filed March 30, 2018. Affirmed.

*Bret A. Heim*, of Immel & Heim, P.A., of Iola, for appellant.

*Jacqie Spradling*, assistant county attorney, for appellee.

*Daniel Schowengerdt*, of Johnson Schowengerdt, PA, of Iola, guardian ad litem.

Before ARNOLD-BURGER, C.J., MALONE and MCANANY, JJ.

PER CURIAM: C.C., the biological mother of D.J.L.T., appeals the district court's decision to terminate her parental rights. C.C. claims the district court erred (1) in finding that she was presumptively unfit pursuant to K.S.A. 2017 Supp. 38-2271, (2) in finding that she was unfit pursuant to the factors set forth in K.S.A. 2017 Supp. 38-2269, and (3) in finding that it was in D.J.L.T.'s best interest to terminate her parental rights. Finding that the district court's decision to terminate C.C.'s parental rights was supported by clear and convincing evidence, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

D.J.L.T. was born in 2010 and he was five years old when authorities began to investigate the care he was receiving from his mother. Sometime before May 4, 2016, officials from D.J.L.T.'s school filed a complaint with the Kansas Department for Children and Families (DCF) alleging neglect. In the complaint, the officials specifically alleged that D.J.L.T. often arrived at school wearing dirty clothes—with dried feces on them—and appearing as though he had not bathed for an extended period of time. The complaint also contained domestic violence allegations involving C.C. and D.J.L.T.'s biological father. DCF reported these allegations to law enforcement.

On May 4, 2016, Lieutenant Steve Womack of the Iola Police Department and DCF Social Worker Katie McVey traveled to C.C.'s home to investigate the report. To their surprise, D.J.L.T. answered the door even though it was a school day. C.C. immediately slammed the door in their faces, so they knocked again. This time, C.C. opened the door and stepped onto the porch. Womack and McVey advised C.C. of the complaint, and McVey asked C.C. if they could look inside her house. C.C. was hesitant to let them in, but by then, Womack smelled the odor of burnt marijuana coming from the house. For that reason, Womack entered the home. Once inside, Womack and McVey observed three other adults in the home; D.J.L.T.'s biological father was not at home.

The other adults in the house admitted that they had smoked marijuana while D.J.L.T. was present. C.C. denied that she smoked marijuana that day. After being asked whether she would pass a UA test, C.C. claimed she would fail because she had been around others smoking marijuana. Confronted with the fact that second-hand smoke would not cause a positive UA, C.C. admitted to smoking marijuana five days earlier.

During her walk-through of the home, McVey noticed that D.J.L.T.'s room had exposed pipes from the walls and that another adult's personal belongings were in the

2

room. Apparently, C.C. was permitting another adult to stay in D.J.L.T.'s room. At this point, Womack took D.J.L.T. into police protective custody. Later at the police station, D.J.L.T. told law enforcement that because the other adult was staying in his room, he had to sleep on the couch or the floor.

On May 6, 2016, the State filed a child in need of care (CINC) petition. That same day, the district court held a temporary custody hearing at which C.C. was present. The district court placed D.J.L.T. in the temporary custody of DCF. Shortly thereafter, KVC Behavioral Health (KVC) began to supervise D.J.L.T.'s case.

On May 10, 2016, KVC invited C.C. to a "48 hour" meeting to explain why D.J.L.T. had been removed from the home and how D.J.L.T. could reintegrate into C.C.'s home. Although C.C. knew about the meeting, she did not attend. Between May 6 and 16, 2016, KVC repeatedly tried to contact C.C. without success.

On May 26, 2016, KVC attempted to have another meeting with C.C. to discuss the initial case plan in regard to reintegrating D.J.L.T. back into C.C.'s home. Again, although C.C. was aware of this meeting, she missed it for unknown reasons. Based on this lack of compliance, drugs being used in C.C.'s home, and the original school complaint, the district court adjudicated D.J.L.T. as a CINC on June 7, 2016.

On June 13, 2016, KVC contacted C.C. at her home and reviewed the May 2016 case plan with her. C.C. was required to complete 15 hours of parenting classes; complete a background check on anyone over the age of 10 living in her home; obtain employment or provide proof of a legal disability; maintain appropriate housing; obtain an alcohol and drug assessment; abstain from the use of illegal drugs; and submit to random UA tests. Of all these requirements, C.C. only completed 15 hours of parenting classes.

Following C.C.'s lack of compliance with the May 2016 case plan, KVC attempted to have another meeting regarding a new case plan on October 21, 2016. Yet again, although she was aware of the meeting, C.C. did not attend. Ultimately, the requirements for the October 2016 case plan were the same as the initial plan. Other than the already completed parenting classes, C.C. failed to complete the remaining requirements.

On March 28, 2017, KVC held the final case plan meeting. C.C. was present at this meeting. The requirements for the March 2017 case plan remained the same as the earlier plans. Just as before, C.C. failed to complete any requirements of the March 2017 case plan beyond the completed parenting classes. From June 2016 to February 2017, C.C. refused to submit to a UA test 26 times, either by explicit refusal or avoiding an appointment with the KVC. When C.C. finally submitted to a UA test on February 1, 2017, she tested positive for marijuana and methamphetamine.

As a requirement to visit D.J.L.T. throughout the case, C.C. had to produce a negative UA test. Because of the refusal to take UA tests or the failure to produce a negative result, her last visit with D.J.L.T. was August 12, 2016.

On April 5, 2017, the State filed a petition to terminate C.C.'s parental rights. At a hearing on May 9, 2017, Womack, McVey, and KVC employees testified to the above facts. D.J.L.T.'s case manager testified that she recommended severance of C.C's parental rights in order to provide D.J.LT. stability. C.C. took the stand in her own defense and testified that KVC employees did not provide her with sufficient information to complete her case plan requirements. C.C. testified that she was legally disabled, preventing her from working. She also testified that she would complete the case plan requirements if given more time and that she loved D.J.L.T. At the end of her direct testimony, C.C. admitted that if she took a UA test that day, she would test positive for marijuana.

4

On June 30, 2017, the district court filed a journal entry terminating C.C.'s parental rights. The district court initially found that C.C. was presumptively unfit under K.S.A. 2017 Supp. 38-2271(a)(5) because D.J.L.T. had been in out-of-home placement for a year or longer and C.C. had refused to carry out the requirements of the case plan. The district court also found C.C. to be unfit because of (1) her use of drugs, (2) her neglect of D.J.L.T., (3) her inability to be rehabilitated through the reasonable efforts of DCF and KVC, (4) her lack of effort to meet D.J.L.T.'s needs, (5) her failure to meet the case plan requirements, and (6) her failure to pay a reasonable cost of D.J.L.T.'s care. Finally, the district court concluded that termination of C.C's parental rights was in the best interest of D.J.L.T. C.C. timely filed a notice of appeal.

ANALYSIS

On appeal, C.C. challenges the district court's termination of her parental rights. In particular, C.C. claims the district court erred in applying the presumption of unfitness, in applying the statutory factors to be considered when terminating parental rights, and in finding that it was in D.J.L.T.'s best interest to terminate her parental rights.

The State argues that the district court properly found that C.C. is presumptively unfit pursuant to K.S.A. 2017 Supp. 38-2271. The State also argues that the district court properly found that C.C. was unfit pursuant to the factors set forth in K.S.A. 2017 Supp. 38-2269. Finally, the State argues that the district court did not err in finding that the termination of C.C.'s parental rights was in D.J.L.T.'s best interest. D.J.L.T.'s guardian ad litem also filed a brief on appeal. The guardian ad litem joins in the State's arguments that the district court did not err in terminating C.C.'s parental rights.

Through the Revised Kansas Code for Care of Children (RKCCC), K.S.A. 2017 Supp. 38-2201 et seq., the Kansas Legislature has determined that the rights of a parent may be terminated under certain circumstances. Before termination, the State must prove

5

"by clear and convincing evidence that the child is a child in need of care." K.S.A. 2017 Supp. 38-2250. Once a child has been adjudicated as a CINC, the court may terminate parental rights by relying on a list of nonexclusive factors or statutory presumptions. See K.S.A. 2017 Supp. 38-2269(b)-(c); K.S.A. 2017 Supp. 38-2271.

> "When this court reviews a district court's termination of parental rights, we consider whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parent's right should be terminated. [Citation omitted.]" *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011).

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). When the sufficiency of the evidence is challenged on appeal, the parent is not required to lodge an objection at trial to preserve the issue. *In re Marriage of Bradley*, 258 Kan. 39, Syl. ¶ 2, 899 P.2d 471 (1995).

*Presumption of unfitness pursuant to K.S.A. 2017 Supp. 38-2271*

C.C. initially claims the district court erred in applying the presumption of unfitness. With respect to C.C., the district court found that she was presumptively unfit under K.S.A. 2017 Supp. 38-2271(a)(5) because D.J.L.T. had been in out-of-home placement for a year or longer and C.C. had refused to carry out the requirements of the case plan. Based on this finding, the burden of proof shifted to C.C. to rebut the presumption by a preponderance of the evidence. See K.S.A. 2017 Supp. 38-2271(b).

The record reflects that the State filed its petition to terminate C.C.'s parental rights on April 5, 2017, less than one year after D.J.L.T. had been removed from the home on May 4, 2016. The petition for termination of parental rights specifically alleged the presumption of unfitness. C.C. argues on appeal that the district court could not rely

6

on the statutory presumption of unfitness in terminating her parental rights because the presumption did not exist when the petition was filed. The State responds that the one-year out-of-home placement presumption under K.S.A. 2017 Supp. 58-2271(a)(5) runs from the time of the out-of-home placement to the date of the hearing, not the date of the petition. Because the hearing did not take place until more than one year after D.J.L.T. had been removed from the home, the State argues that the district court properly relied upon the presumption in terminating C.C.'s parental rights.

We have found no Kansas appellate court case that directly addresses this issue. However, we find that it is unnecessary to address the statutory presumption of unfitness in C.C.'s appeal in order to uphold the termination of her parental rights. For reasons we will discuss in the following paragraphs, there is clear and convincing evidence to support the termination of C.C.'s parental rights pursuant to the factors set forth in K.S.A. 2017 Supp. 38-2269, without the application of the presumption of unfitness.

*Termination of parental rights pursuant to K.S.A. 2017 Supp. 38-2269*

Next, C.C. claims the district court erred in finding her to be an unfit parent under K.S.A. 2017 Supp. 38-2269. Once the child has been determined to be a CINC, the district court can terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2017 Supp. 38-2269(a). When a court looks to the foreseeable future, the relevant time period is viewed from the perspective of the child, not the parent. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009).

K.S.A. 2017 Supp. 38-2269(b) lists nonexclusive factors the court shall consider in making a determination of unfitness. The court also must consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 2017

7

Supp. 38-2269(c). Any one of the factors in K.S.A. 2017 Supp. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2017 Supp. 38-2269(f). The district court found that C.C. was an unfit parent based on K.S.A. 2017 Supp. 38-2269(b)(3), (b)(4), (b)(7), (b)(8), (c)(3), and (c)(4). These provisions state:

"(b) In making a determination of unfitness the court shall consider, but is not limited to, the following, if applicable:

. . . .

(3) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;

(4) physical, mental or emotional abuse or neglect or sexual abuse of a child;

. . . .

(7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;

(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child. . . .

. . . .

"(c) In addition to the foregoing, when a child is not in the physical custody of a parent, the court, shall consider, but is not limited to, the following:

. . . .

(3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home; and

(4) failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay." K.S.A. 2017 Supp. 38-2269(b), (c).

C.C. argues that the State failed to establish each factor. She first claims that the State presented no evidence that supported subsections (b)(4) or (c)(4). According to C.C., the State did not present evidence that indicated she neglected D.J.L.T. or that she did not, at least partially, financially support his out-of-home placement. These assertions simply are not true. At the termination hearing, the evidence showed that C.C. neglected D.J.L.T. by sending him to school without being bathed or dressed in clean clothes, and

8

law enforcement removed D.J.L.T. from the home because of illegal drug use in his presence. As to the lack of financial support, on cross-examination, C.C. testified that she had not paid any money to support D.J.L.T. since he was removed from her home.

For the remaining statutory factors, C.C. first takes issue with KVC only providing her with a contact number to obtain a drug evaluation; she apparently wanted KVC to make the appointments for her. C.C. then claims the evidence indicated that she could have completed the case plan in the foreseeable future, specifically asserting that the statutes do not quantify a one-year time limit for the foreseeable future.

C.C. is asking this court to reweigh the evidence. The evidence at the termination hearing painted a picture of a mother who was given every opportunity to change but would not do so. KVC employees repeatedly tried to keep track of C.C. for UA tests and meetings, but C.C. refused to work with them. While the State presented evidence that C.C. had the ability to complete the case plan, she never came close to doing so.

The evidence further showed that C.C. would not change her conduct in the foreseeable future, based on her lack of effort to complete the case plan combined with her continued drug use. Even at the final termination hearing, C.C. candidly admitted that she could not pass a UA test that day. Contrary to C.C.'s claim, the district court did not apply a strict one-year time restraint for finding that C.C. was unlikely to change her conduct in the foreseeable future.

One factor alone can be sufficient to terminate parental rights, including the use of illegal drugs to the point of harming the child. See K.S.A. 2017 Supp. 38-2269(b)(3). Viewing all the evidence in the light most favorable to the State, a rational fact-finder could have found by clear and convincing evidence that C.C was unfit as a parent and that her conduct or condition was unlikely to change in the foreseeable future.

*Best interest of the child*

Finally, C.C. claims that terminating her parental rights was not in the best interest of D.J.L.T. To support this claim, C.C. points out that the evidence showed that when she spent time with D.J.L.T., things went well, indicating a strong bond between them. As such, C.C. urges this court to find that it was not in D.J.L.T.'s best interest to terminate C.C.'s parental rights.

Upon making a finding of unfitness of the parent, the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child. In making such a decision, the court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2017 Supp. 38-2269(g)(1). An appellate court reviews a district court's decision regarding a child's best interest for an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d 1105, 1116, 336 P.3d 903 (2014). As C.C. is asserting that the district court abused its discretion, she bears the burden of showing an abuse of discretion. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

Here, a reasonable person could agree that it was in the best interest of D.J.L.T. to terminate C.C.'s parental rights. While some testimony tended to show that D.J.L.T. enjoyed spending time with C.C., the overwhelming evidence revealed that C.C. could not make the necessary life changes to properly care for her son. To put it simply, C.C. would not or could not stop using illegal drugs. Because of her drug usage, C.C. had not visited D.J.L.T. for nearly nine months before the termination hearing. Based on the record in its entirety, C.C. has failed to show that the district court abused its discretion by finding that it was in D.J.L.T.'s best interest to terminate C.C.'s parental rights.

Affirmed.

10